Thank you, Your Honor. Good morning again, Your Honors. John Lemon for Mr. Orgaz-Vega. Your Honors, Mr. Orgaz's conviction should be reversed because the prosecutor committed error by, number one, inviting the jury to make the defendant prove his innocence. Number two, expressly telling the jury that the proof beyond a reasonable doubt standard applied to the defendant. And then three, misstating the evidence that actually was adduced at trial. Significantly, the judge overruled the defense objections. There was no curative, and so there was the damage that was done was never undone in this case. With respect to inviting the jury to make the defendant prove his innocence, the prosecutor used a boogeyman analogy where the defendant was, the stand-in for the defendant in the analogy was a little boy who claimed to his parents that, claimed to his mother that he had been late from school because a boogeyman had gotten him. And his mother clearly was the stand-in for the jury. And at E.R. 299. I'm glad I wasn't a juror listening to that. Even reading it, it's almost impossible to figure out what in the world they're talking about. Well, it is a bit lengthy. I concede that. And clumsy. Well, perhaps. But it was nonetheless effective. And the significant part that I would like to point out is that at E.R. 299, the prosecutor says that the mother says to the child, prove to me that happened. And at that point, that's when the, I was co-trying the case. I was second chair. The other attorney at that point objected. The judge overruled the objection. And then he went on with this analogy. And then came back to, actually, I think, oh, yeah. And that's the point that the prosecutor started discussing how the jury should view the defense witnesses. And he says that. If you want to really talk about that analogy, why isn't that analogy such as it is saying, look, they brought you a bunch of, they bring you a bunch of things, A, B, and C, and they don't add up to anything. Well, I think. I mean, you may not have to bring anything. Right. But if you've got A, B, and C in front of the jury and they don't add up to anything, well, then they don't add up to anything. Well, I think that that standing alone, maybe that's okay. But I think that the statement, prove to me that that happened, that's problematic. And then coming back after the objection and telling the jurors that they have an obligation to view the defense witnesses in the exact same fashion that you do the government witnesses, that part is fine. But then saying, because, remember, that the standard is beyond a reasonable doubt. At that point, we have reversible error. In the United States v. Mastrangelo case. That was not objected to. I'm sorry? That was not objected to. Well, at that point, the objection had already been lodged and overruled. No, not that objection. He objected to the analogy, this strange statement at the end after he says, and says right in here, remember, we have the burden of proof, he calls it. We have the burden of persuasion. We have to do it. It's the government's burden. And then he does say at the end, remember, the standard is beyond a reasonable doubt. But that's totally different from what you objected to before. Well. That wasn't objected to, it looks like to me. I guess respectfully, I don't agree that it's totally different. I think what happened there is the prosecutor used this analogy. The objection was lodged. It was specifically overruled. And then the prosecutor went back and commented on how, commented on the various, on the burden of proof that he had, but also said that the burden was proof beyond a reasonable doubt as to the defendant's witnesses. At that point, the objection is due. I mean, I wish, finding myself in trial from time to time, I wish that I had a jury trial Tito where I could pause and stop and rewind and insert the objections exactly where I would like them to be. But in the real world, these things happen quickly. And when it becomes obvious that, I mean, you don't have to be a weatherman to know which way to win. You don't really counsel. Most of us understand the real world. We've been there and done that. Well, Your Honor, I'm not saying that that remark actually was intentional on the part of the prosecutor. I don't think that the characterization that it was a slip of the tongue is inaccurate. I think it probably was a slip of the tongue. I don't think that Mr. Aronson was trying to do that. But the effect is not lost on the jury. And just because, just because. Say it was not lost on the jury because it's found guilty, that's not lost on the jury? No, because it, well, I don't think we can say it wasn't lost on the jury. That's what I'm, that's what I'm getting at. And again. I'm not talking about who lost what. I'm just saying it was not objected to. So let's say that's a plain error question. Well, I. Let's, what if it were? Again, there had been an objection lodged about three sentences before that. It was expressed, it was quickly overruled. And when you're a trial lawyer trying to win a case, and you, every time you object, particularly in an argument, and that objection is summarily overruled, you're losing credibility in the eyes of the jury. I think the objection was to the boogeyman parable or the analogy or whatever you want to call it. Which has nothing to do with the burden of persuasion. It's simply saying, if you've got, if somebody's brought you back A, B, and C, and they add up to zero, then they're still zero. Zero, zero. That's what they said. And that's right. There's nothing wrong with that argument. Except that he also said, during that analogy, prove to me that happened. The mother said to the little boy, prove to me that happened. That's what triggered the burden-shifting objection in the first place. Well, what, tell me why the judges and jury instructions didn't cure that problem. I mean, after all, they were instructed that the prosecutor or the burden of proof is beyond reasonable doubt, and that the statements of the lawyers are not evidence. I mean, you know, even if I agree with you that I, that the prosecutor do that terrible analogy, that shifted the burden of proof, because I kind of read it, it's hard to read, but it's, it's, I kind of read it the same way. But the judge was really clear on the jury instructions about what the jury's job was. Well, he, what the judge did, though, he overruled the objections, did not give a curative, and then simply read the pattern instructions to the jury at the end. And although clearly the conduct in this case is nowhere near as egregious as what took place in Perlazza, the Perlazza court is instructive. They talk about how the pattern instructions don't cure a situation like this. Unless there has been a curative immediately after the error occurred. And here the district court never acknowledged that there was an error. The district court, in fact, consistently overruled the defense objection. Okay. Let's assume there was error and that the judge was wrong when he overruled the objection and further assumed that the standard of proof is that the prosecution must show that it was harmless beyond a reasonable doubt. Why is it not harmless beyond a reasonable doubt? What is the evidence? Your Honor, this case was all about a reasonable doubt. And here we have no actual birth certificate for the defendant. We have a Mexican baptismal registry that we have expert testimony from a lawyer from Mexico who testifies that that's not a, that you can register someone's birth within six months of them actually being born. That doesn't necessarily say where they were born. He has three different locations in the Zay file saying that he was born. Granted, they're all in Mexico, but three different locations. His mother tells various people throughout the course of her life that the boy was born in a border town and that through her ignorance she had him registered in Mexico. We hear that from no fewer than three family members. And she also told it to the probation officer back in 1981, which could not have been done in anticipation of any future litigation and certainly wouldn't have had any bearing on whatever happened to him in state court. And there was reasonable doubt as to where Mr. Orgaz was born. And that is why this is not harmless error. And I see I have only 50 seconds remaining, so if I could save that. Sure. If the Court please. It appears that the Court has pretty well made the arguments that the government was going to be making in this case, and that is that this analogy was poorly graphed, and we disagree with the statement just made that it was set up to the little boy in the analogy was a stand-in for the defendant. We submit it was a stand-in for the defense. And the fact of the matter is the defense in this case simply put together a string of facts which were interesting, which would not make the final point to which that this particular individual was born in the United States. And therefore. But they don't have to prove that. The government has to prove that he was born in the United States. Well, they have to. I'm sorry. The government has to prove he was not born in the United States? Right. Well, in the face of the evidence that we did have, the government did have, that is, his A file in which he claims he was born in Mexico and submits no fewer than three documents, all of which suggest that he was not suggest, they say that he was born in Mexico. The fact that he was deported and never made the claim that he was born in the United States. The fact that he was arrested and never claimed he was in the United States. And during those times, the mother was still alive during all of that time. And the fact of the matter is all the government's evidence demonstrated that he, in fact, was born in Mexico. Now, in that situation, if they're going to come up with an affirmative defense to it that he was born in Laredo, Texas, then it is their burden to prove that. If they're going to come up with an affirmative defense, the defense does need to prove that, in fact, he was born in Laredo. And they simply did not do that. And that's what the analogy was set up to handle. As far as the burden beyond a reasonable doubt, again, as the Court pointed out, that was not objected to. And it, at best, it was a slip of the tongue, and it just simply slipped by everybody. And just something that could not have factored into the jury's decision because the number of times that the prosecutor in final argument mentioned that he, he and the government had the burden of proof, and also the jury instructions to that effect were pleat with the same statement. And so it just seems to me that that particular statement, that is, that the burden beyond a reasonable doubt was completely, assuming it was wrong, was completely canceled out by the jury instructions and also the prosecutor's own statements. If there – if we were to find prosecutorial misconduct and the judge was wrong in overruling the objection, what's your argument that the error was harmless beyond a reasonable doubt? It was harmless beyond a reasonable doubt because – simply because of the weight of the evidence against this particular defendant. It is very clear that the jury just did not buy the defense. As hard as the defense tried to prove that he was born in Laredo, Texas, the jury just did not buy it. And the government's showing, demonstrating that the government's evidence was significantly more convincing than what the defense did. And I must say that we – again, we disagree with the proposition that this is a constitutional error. We submit that under the Tam case, that this is a Tam-type of situation, that is, that the – that when you're simply commenting on the strength of the defense evidence, it does not rise to a constitutional kind of a situation. That's set forth in the law. Well, but arguably, he went beyond that here. I mean, the literal meaning of what he said was that the defense had the burden of proving beyond a reasonable doubt in that last slip. I mean, that was the literal meaning of what he said. So that is a burden-shifting argument. It's not a commenting on the strength of the evidence argument. Well, and I can't – I can't disagree with that. If that – if that – if that comment in and of itself was a – would be – would be a comment that the defendant has the burden of proving his innocence beyond a reasonable doubt, then that would be a type of burden-shifting. Excuse me. I have a horrible cough. That would be a burden-shifting situation. But once again, it's simply – and if you're going to claim that that's the burden-shifting situation, it has to be judged on constitutional standards, then clearly it's a harmless situation. And as to the first – the first where the objection was made, that, again, is a TAM type of situation, where we're simply asking the jury – we're asking the defendant, why didn't you – you didn't prove it beyond a reasonable – well, you didn't prove it. You didn't prove your case. You put all these facts together, and you just didn't prove it. Why? You're saying that again, though. You're saying you didn't prove it beyond a reasonable doubt. No. He doesn't have to do that. That is the unobjective-to statement. The statement that I'm – I was just talking about is the one that was preceded that to which the objection was made. And as I say, if that – if the burden beyond a reasonable doubt statement is to be And we did prove it harmless – or demonstrate it was harmless simply because of the sheer weight of the evidence against this particular defendant and the complete collapse of their affirmative defense. And with that, I – unless there are any other questions, I'd like to submit. All right. Your Honor, the first thing I'd like to point out is this is not an affirmative defense. Being not a United States citizen is an element – being an alien is an element of a 1326 offense. Right. But they – what he's saying – you can correct me if I'm wrong – is that the element beyond a reasonable doubt. So what the defense then has to do is create doubt. Not that you have to prove it to any particular degree, but once they put in their evidence that he's not – I mean, that he – yeah, that he's not a U.S. citizen, then the defense's duty is to put in evidence that will create doubt in the jury's mind on that element. Right. That was the element. And you did that. That's the element we disputed. I just heard the government attorney say that this is an affirmative defense. Well, he said that, but don't take – we don't take the statements of lawyers. Okay. It's our law. Well, we certainly contested the element of alienage. That was it. And that is – there was reasonable doubt in this case. That's why there is not – that's why the error was not harmless beyond a reasonable doubt because, again, there was a serious question as to where Mr. Orgaz was born. You know, their evidence was pretty strong. It was his own A file with documentary evidence that he had submitted. Right. But the thing about it, he's not going to necessarily know where he was born. And he's been in and out of custody and in and out of Mexico while his mom isn't with him. And so that was kind of the whole point is that – Why would he not know where he was born? Because he's – I mean, you don't know – you don't start having memories until you're three or four years old, I guess. I mean, I'm saying he was – But most people throughout their lives have to fill in forms that ask, where were you born? This – we're talking about migrant family of a woman who had multiple relationships. She had children by many different fathers. There was just a lot of unclear things that could not possibly be proven that related to things that happened 30 years ago in a border town. There's just not necessarily any reason to expect that Mr. Orgaz himself would know where he was born, particularly if his mother didn't disclose to him that he was born, which is the thrust of our argument, that he was born in the United States until much later. And in fact, none of his – none of the testimony at trial was that he had been informed by anyone that he had been born in the United States. It was the other people in the family that were talking about it. So that's kind of the gist of the whole argument, is that no one can really ever say for sure where he was born, but there is – there was enough evidence to create a reasonable doubt. All right. The matter just argued will be submitted. We thank counsel for their arguments. Thank you. And we will be in recess. Thank you. Bye. Bye. Bye. Bye. Bye.
judges: Fernandez, Wardlaw, Collins